

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
02/05/2016

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **ODIN DEMOLITION & ASSET** | § | **Case No. 14-35211** |
| **RECOVERY, LLC,** | § | |
| | § | **Chapter 11** |
| Debtor. | § | |

**MEMORANDUM OPINION REGARDING JOINT MOTION TO REOPEN CASE TO**
**PERMIT FILING OF MOTION FOR ORDER INTERPRETING AND ENFORCING**
**CHAPTER 11 PLAN AND NOTICE OF OPPORTUNITY FOR HEARING**
[Doc. No. 123]

### I. INTRODUCTION

The dispute at bar arises from a motion to reopen a Chapter 11 case in which a plan of reorganization was confirmed. The movants are defendants in a state court lawsuit that the reorganized debtor is presently prosecuting. They want to reopen this case so that they can file a motion requesting this Court: (1) to interpret the confirmed plan; (2) to hold that the plan did not reserve the claims that the reorganized debtor is now prosecuting; and (3) to enter an order requiring the reorganized debtor to dismiss the state court lawsuit with prejudice. The movants cite the Fifth Circuit's holdings in *United Operating* and *Texas Wyoming* in support of their position that the plan failed to "specifically and unequivocally" reserve the state court claims. *See In re United Operating, LLC*, 540 F.3d 351 (5th Cir. 2009); *Spicer v. Laguna Madre Oil & Gas II, L.L.C. (In re Tex. Wyo. Drilling, Inc.)*, 647 F.3d 547 (5th Cir. 2011).

Opposing the movants are the reorganized debtor, the largest unsecured creditor in this case, and the U.S. Trustee. They contend that *United Operating* and *Texas Wyoming* are inapplicable because unlike the defendants in those cases, the movants were neither creditors nor shareholders of the debtor who did not—indeed, could not—participate in this Chapter 11 case.

1

The movants acknowledge that they were not creditors or shareholders of the debtor. However, they argue that the holdings of *United Operating* and *Texas Wyoming* should be expanded to include non-creditor/defendants whom the reorganized debtor sues post-confirmation.

The Court issues this Memorandum Opinion because of the novel issue that the movants have raised: Are the movants, as non-creditor/defendants, protected by the holdings of *United Operating* and *Texas Wyoming*? This Court concludes that they are not, and for this reason, among others, finds that their motion to reopen this case should be denied.

## II. PROCEDURAL HISTORY

On November 12, 2015, Mainland Bank ("Mainland") and Marathon Petroleum Company LP ("Marathon Petroleum") (collectively, the "Movants") filed their Joint Motion to Reopen Case to Permit Filing of Motion for Order Interpreting and Enforcing Chapter 11 Plan and Notice of Opportunity for Hearing (the "Motion to Reopen"). [Doc. No. 123]. On December 2, 2015, Odin Demolition & Asset Recovery, LLC (the "Debtor") filed its objection to the Motion to Reopen (the "Debtor's Objection"). [Doc. No. 126]. On December 7, 2015, Northwinds Abatement, Inc. ("Northwinds"), the largest unsecured creditor of the Debtor, filed its Limited Joinder to the Debtor's Objection. [Doc. No. 129]. On December 17, 2015, the Movants filed their Reply to the Debtor's Objection. [Doc. No. 132]. Then, on January 11, 2016, the Debtor filed its Response to the Movants' Reply. [Doc. No. 141].

On January 13, 2016, the Court held a hearing on the Motion to Reopen. The following attorneys made appearances: (1) Jason S. Brookner and Trinitee G. Green for the Movants; (2) John Wesley Wauson and Jarrod B. Martin for the Debtor; (3) Jeffrey Wells Oppel ("Oppel") for Northwinds; (4) Matthew Cavanaugh for Iberia Bank; and (5) Christine March for the U.S. Trustee.

The Court admitted exhibit numbers 1-8 tendered by the Movants and exhibits A-S tendered by the Debtor.  Two witnesses testified: (1) Darrell Scott Funk ("Funk"); and (2) Mary Catherine Mitchum.  The Court finds that their testimony was very credible and gives substantial weight to their testimony.

The Court now denies the Motion to Reopen, and in accordance with Rules 9014 and 7052,[1] issues the following Findings of Fact and Conclusions of Law explaining its decision.  To the extent that any Finding of Fact is construed to be a Conclusion of Law, it is adopted as such.  To the extent that any Conclusion of Law is construed to be a Finding of Fact, it is adopted as such.  The Court reserves the right to make any additional Findings and Conclusions as may be necessary or as requested by any party.

### III. FINDINGS OF FACT

1. On September 24, 2014, the Debtor filed a voluntary Chapter 11 petition.  [Doc. No. 1].

2. On October 7, 2014, the Debtor filed its Schedules and Statement of Financial Affairs (SOFA).  [Doc. No. 19].

3. On April 6, 2015, the Debtor filed its original Chapter 11 plan, [Doc. No. 63], and its disclosure statement, [Doc. No. 64].

4. On April 7, 2015, the Debtor filed an unopposed Emergency Motion to Mediate wherein the Debtor requested this Court's approval to participate in mediation with a secured creditor, Iberia Bank.  [Doc. No. 67].

5. On April 15, 2015, this Court entered an order authorizing the Debtor and Iberia Bank to participate in mediation (the "First Mediation").  [Doc. No. 81].  The purpose of the First

---

[1] Any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e., §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code, unless otherwise noted. Further, any reference to a "Rule" is a reference to the Federal Rules of Bankruptcy Procedure.

Mediation was to negotiate certain terms of the plan of reorganization. [Hr'g held on Jan. 13, 2016, at 10:02:58−10:03:02 A.M.].

6. On April 24, 2015, the Debtor initiated a lawsuit in Harris County—Cause No. 2015-23728—and named the Movants as defendants (the "State Court Action"). [Debtor's Ex. A]. There are two causes of action that the Debtor is prosecuting against the Movants: (1) negligence; and (2) tortious interference with a contract. [Debtor's Ex. A, pp. 14−15].

7. After this Court entered its order authorizing mediation, several parties appeared and participated in the First Mediation including Iberia Bank, Kyle Bates of Schneider Wallace Cottrell Konecky Wotkyns LLP (special litigation counsel for the Debtor), and Margaret McClure and John Wesley Wauson (bankruptcy counsel for the Debtor). [Hr'g held on Jan. 13, 2016, at 10:02:38−10:02:54 A.M.]. As a result of the First Mediation, the parties came to an agreement whereby Iberia Bank would receive a first lien on any proceeds that the Debtor is able to recover from the State Court Action (the "Net Litigation Proceeds"). [Hr'g held on Jan. 13, 2016, at 10:04:12−10:04:21 A.M.].

8. Subsequently, a second mediation took place whereby counsel for the Debtor and counsel for Northwinds negotiated certain terms of the plan of reorganization (the "Second Mediation"). [Hr'g held on Jan. 13, 2016, at 10:04:21−10:04:30 A.M.]. As a result of their negotiations, the class of general unsecured creditors—including Northwinds—received a second lien on the Net Litigation Proceeds. [Hr'g held on Jan. 13, 2016, at 10:04:31−10:04:38 A.M.].

9. Following the First Mediation and Second Mediation, the Debtor informed this Court of the negotiated terms concerning the Net Litigation Proceeds. [*See* Hr'g held on Jan. 13, 2016, at 10:04:43−10:04:47 A.M.]. And, as a result of the two mediations, on April 29,

4

2015, the Debtor filed an amended Chapter 11 plan (the "Amended Plan") incorporating

the negotiated terms, [Doc. No. 90], and an amended disclosure statement, [Doc. No. 91].

As part of the terms negotiated between the Debtor and Iberia Bank, the Amended Plan

includes a paragraph entitled "Pledge of Net Litigation Proceeds," which, in pertinent

part, sets forth the following:

> Iberia [Bank] is granted an automatically perfected lien on net litigation
> proceeds from any and all causes of action that [the Debtor] has against
> any or all of Rhino Recycling LLC, Mainland Bank and Marathon
> Petroleum Corporation . . . .

[Doc. No. 90, p. 2 of 6].

10. Funk, an attorney and shareholder of the law firm of Gray Reed & McGraw, represents

Mainland in the State Court Action. [Hr'g held on Jan. 13, 2016, at 9:33:38−9:34:03

A.M.]. He is the lead attorney at Gray Reed & McGraw who is currently working on the

State Court Action. [Hr'g held on Jan. 13, 2016, at 9:37:07−9:37:34 A.M.].

11. On May 1, 2015, Mainland was duly served with the citation and the original petition

initiating the State Court Action. [Hr'g held on Jan. 13, 2016, at 9:41:20−9:41:37 A.M.];

[Debtor's Exs. A & B]. Then, on May 8, 2015, Marathon was also duly served with the

citation and the original petition initiating the State Court Action. [Hr'g held on Jan. 13,

2016, at 9:41:27−9:41:37 A.M.]; [Debtor's Exs. A & C].   Upon receiving these

documents in early May 2015, Funk learned of the existence of the State Court Action

and of the Chapter 11 case filed by the Debtor.   [Hr'g held on Jan. 13, 2016, at

9:42:34−9:43:11 A.M.]; [*see* Debtor's Ex. A, p. 14].

12. After learning of the State Court Action and the pending bankruptcy case, Funk reached

out to either "Mr. Brookner or Ms. Green," who are bankruptcy attorneys at his firm.

[Hr'g held on Jan. 13, 2016, at 9:43:12−9:44:06 A.M.].   While his firm had access to

CM/ECF documents, neither Funk nor any another attorney at his firm took any action at that time to check the docket sheet of the Debtor's Chapter 11 case. [Hr'g held on Jan. 13, 2016, at 9:44:07−9:44:28 A.M.].   Indeed, Funk never instructed anyone at the firm to check on the status of the bankruptcy case until the "summer" of 2015.   [Hr'g held on Jan. 13, 2016, at 9:44:28−9:44:53 A.M.].

13. After the commencement of the State Court Action on April 24, 2015 and prior to the date of the filing of the Motion to Reopen (i.e., November 12, 2015), the Debtor and Rhino Recycling LLC ("Rhino")—a defendant in a separate lawsuit initiated by the Debtor—entered into settlement discussions, whereby Rhino attempted to reach a global settlement on behalf of itself and the Movants.   [Hr'g held on Jan. 13, 2016, at 9:34:39−9:34:48; 9:35:07−9:35:35 A.M.].

14. Sometime in May or early June 2015, Funk learned that these global settlement discussions were taking place, [Hr'g held on Jan. 13, 2016, at 9:45:19−9:45:32; 9:45:00−9:45:31 A.M], and while Funk was not originally involved with such settlement discussions, [Hr'g held on Jan. 13, 2016, at 9:34:55−9:34:58 A.M.], he later became directly involved with negotiations with the Debtor, [Hr'g held on Jan. 13, 2016, at 9:35:37−9:35:50; 9:45:00−9:45:31 A.M.].

15. On June 4, 2015, this Court held a hearing on the confirmation of the Amended Plan (the "Confirmation Hearing").   Relying on the changes made in the Amended Plan—which reflected the terms negotiated between Northwinds and the Debtor at the Second Mediation—Northwinds did not oppose confirmation of the Amended Plan.   [*See* Hr'g Tr. 14:5−16, June 4, 2015].   Iberia Bank also voted in favor of the Amended Plan.   [*See* Hr'g Tr. 5:22−6:5, June 4, 2015].

16. On the same day, the Court entered an Order Confirming Debtor's Plan of Reorganization and Disclosure Statement (the "Confirmation Order"). [Doc. No. 99]. As part of the terms negotiated at the Second Mediation between the Debtor and Northwinds, the Confirmation Order includes a paragraph entitled "Pledge of Net Litigation Proceeds," which, in pertinent part, sets forth the following:

> Holders of Class 2 allowed general unsecured claims are granted an automatically perfected second lien (behind Iberia Bank's automatically perfected first lien) on net litigation proceeds from any and all causes of action that [the Debtor] has against any or all of Rhino Recycling LLC, Mainland Bank and Marathon Petroleum Corporation . . . .

[*Id.*].

17. During the pendency of the Debtor's case, the Movants never filed proofs of claim, notices of appearances, or objections to confirmation of the Amended Plan. [*See* Claims Register and Pacer Docket]. Further, the Movants did not personally appear at the Confirmation Hearing, nor ever indicated to this Court that they were creditors of the Debtor. Nor did the Debtor list the Movants in his Schedules as creditors. [*See* Doc. No. 19]. Based upon all of these circumstances, this Court finds that the Movants, on the date of the filing of the Debtor's bankruptcy petition, were neither creditors nor shareholders of the Debtor.

18. On July 28, 2015, the Debtor filed its Motion to Close Chapter 11 Bankruptcy Case and Issue Final Decree (the "Motion to Close"). [Doc. No. 114].

19. Sometime at the end of July 2015, Funk ceased negotiations with the Debtor and the parties did not reach a settlement regarding the claims asserted in the State Court Action. [Hr'g held on Jan. 13, 2016, at 9:36:03–9:36:09 A.M.].

20. During the time period between the end of July 2015 and November 12, 2015 (i.e., the date of the filing of the Motion to Reopen), Funk spent most of his time working on and preparing for a separate trial unrelated to the State Court Action. [Hr'g held on Jan. 13, 2016, at 9:36:14−9:36:58 A.M.]. However, after this particular trial ended in October of 2015, Funk conferred with Marathon and Mr. Brookner (i.e., Funk's fellow law partner who is a bankruptcy attorney) about whether any action in the Debtor's bankruptcy case should be taken. [Hr'g held on Jan. 13, 2016, at 9:37:42−9:38:06 A.M.].

21. On August 26, 2015, this Court granted the Motion to Close and entered an order closing the Chapter 11 case. [Doc. No. 120].

22. More than two months later, on November 12, 2015, the Movants filed the above-referenced Motion to Reopen. [Doc. No. 123].

23. On December 2, 2015, the Debtor filed its objection to the Motion to Reopen (previously defined as the Debtor's Objection), [Doc. No. 126], and on December 7, 2015, Northwinds filed its Limited Joinder to the Debtor's Objection, [Doc. No. 129].

24. On December 17, 2015, the Movants filed their Reply to the Debtor's Objection, [Doc. No. 132], and on January 11, 2016, the Debtor filed its Response to the Movants' Reply, [Doc. No. 141].

25. On January 13, 2016, this Court held a hearing on the Motion to Reopen. After hearing arguments and admitting exhibits, the Court heard closing arguments from the parties and allowed the parties to file briefs and certificates of authorities by January 20, 2016.

26. On January 19, 2016, the Debtor filed its brief, [Doc. No. 145], and the Movants filed their Certificate of Authority, [Doc. No. 146].

8

27. On January 20, 2016, the Court held a hearing to listen to further arguments made by counsel, and then the Court took the matter under advisement.

## IV. CONCLUSIONS OF LAW

### A. Jurisdiction

The Motion to Reopen is a contested matter under Rule 9014. The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [the Code], or arising in or related to cases under title 11." District courts may, in turn, refer these proceedings to the bankruptcy judges for that district. 28 U.S.C. § 157(a). In the Southern District of Texas, General Order 2012-6 (entitled General Order of Reference) automatically refers all eligible cases (which include contested matters) and adversary proceedings to the bankruptcy courts.

### B. Venue

Venue is proper pursuant to 28 U.S.C. § 1408(1), as the Debtor had its principal place of business in the Southern District of Texas for the 180 days preceding the filing of the bankruptcy petition in this case.

### C. Constitutional Authority of this Court to Enter a Final Order on the Motion to Reopen

In the wake of the Supreme Court's issuance of *Stern v. Marshall*, 131 S. Ct. 2594 (2011), this Court is required to determine whether it has the constitutional authority to enter a final order in any dispute brought before it. In *Stern*, which involved a core proceeding brought by the debtor under 28 U.S.C. § 157(b)(2)(C), the Supreme Court held that a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." *Id.* at 2620. The pending

dispute before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O) because reopening this case under § 350(b) potentially affects the adjustment of the relationship between the Debtor and its creditors. Specifically, if this Court reopens the case, what will follow is a hearing on the motion that the Movants will file requesting this Court to interpret the Amended Plan and issue a ruling that the causes of action being prosecuted against the Movants in the State Court Action were not properly reserved under either the Amended Plan or the Confirmation Order; and that therefore the Debtor is barred from bringing these causes of action. If this Court actually issues such a ruling, it would assuredly cause an adjustment of the relationship between the Debtor and its creditors—namely, Iberia Bank and all general unsecured creditors (including Northwinds)—because their liens on the Net Litigation Proceeds would be eviscerated.

Because *Stern* is replete with language emphasizing that the ruling is limited to the one specific type of core proceeding involved in that dispute (i.e. § 157(b)(2)(C)), this Court concludes that the limitation imposed by *Stern* does not prohibit this Court from entering a final order here. A core proceeding under § 157(b)(2)(O)—particularly one involving an express Code provision governing the reopening of a case (i.e., § 350)—is entirely different than a core proceeding under § 157(b)(2)(C). *See, e.g., Badami v. Sears (In re AFY, Inc.)*, 461 B.R. 541, 547–48 (8th Cir. B.A.P. 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); *see also In re Davis*, 538 Fed.Appx. 440, 443 (5th Cir. 2013), *cert. denied sub nom. Tanguy v. W.*, 134 S. Ct. 1002 (2014) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,'

*Stern* expressly provides that its limited holding applies only in that 'one isolated respect'. . . . We decline to extend *Stern*'s limited holding herein.").

Alternatively, even if *Stern* applies to all of the categories of core proceedings brought under § 157(b)(2), *see In re Renaissance Hosp. Grand Prairie Inc.*, 713 F.3d 285, 294 n. 12 (5th Cir. 2013) ("*Stern*'s 'in one isolated respect' language may understate the totality of the encroachment upon the Judicial Branch posed by Section 157(b)(2) . . . ."), this Court still concludes that the limitation imposed by *Stern* does not prohibit this Court from entering a final order in the dispute at bar. In *Stern*, the debtor filed a counterclaim based *solely* on state law, and the resolution of that counter claim would not necessarily lead to a determination of the validity or invalidity of the claim filed by the defendant against the debtor's estate. Conversely, in the case at bar, the Motion to Reopen is based solely on an express provision of the Code, § 350(b), and judicially-created bankruptcy law interpreting this provision; there is no state law involved whatsoever. This Court is therefore constitutionally authorized to enter a final order on the Motion to Reopen. *See In re Cong Nguyen*, 2015 WL 6941301, at \*4 (Bankr. S.D. Tex. Nov. 9, 2015) (noting that the bankruptcy court has constitutional authority to enter a final order when the dispute is based upon an express provision of the Code and no state law is involved).

Finally, in the alternative, this Court has the constitutional authority to enter a final order on the Motion to Reopen because the parties in this contested matter have consented, impliedly if not explicitly, to adjudication of this dispute by this Court. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1947 (2015) ("*Sharif* contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be expressed. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . .").

11

Indeed, the Movants filed the Motion to Reopen in this Court, [Finding of Fact No. 22]; the Debtor filed the Debtor's Objection, [Finding of Fact No. 23]; Northwinds filed its joinder to the Debtor's Objection, [*Id.*]; the Movants filed a Reply, [Finding of Fact No. 24]; the Debtor filed a Response to the Reply, [*Id.*]; the parties proceeded to make a record at the hearing held on January 13, 2016, [Finding of Fact No. 25]; thereafter the parties filed additional briefing, [Finding of Fact No. 26]; and the Court held yet another hearing on January 20, 2016 to listen to further argument, [Finding of Fact No. 27]—and all of these pleadings were filed and hearings were held without any of the parties ever objecting to this Court's constitutional authority to enter a final order on the Motion to Reopen. If these circumstances do not constitute consent, nothing does.

## D. Circumstances Under Which the Debtor's Case May be Reopened

A bankruptcy court has the authority to reopen a bankruptcy case under § 350(b) "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). In the case at bar, the Movants do not seek to reopen this case to administer any assets or to accord relief to the Debtor. Rather, they seek to reopen the case "for other cause." Specifically, the Movants request that this Court reopen the Debtor's case to interpret the Amended Plan and enter an order finding that the claims against the Movants in the State Court Action: "(i) became property of the estate on the Petition Date[;] (ii) were not disclosed as an asset in the Debtor's Schedules[;][2] (iii) were not properly reserved or otherwise dealt with in the [Amended Plan], and

---

[2] The State Court Action was filed on April 24, 2015, which was approximately 6 months after the filing the petition initiating this Chapter 11 case. [Findings of Fact Nos. 1 & 6]. Thus, the lawsuit itself was not scheduled on the Schedule B because it was not in existence on the date of the filing of the petition. However, a review of the original petition filed in the State Court Action indicates that the causes of action are based upon pre-petition events. Therefore, the original Schedule B should have disclosed that unfiled claims based upon pre-petition events existed. *See In re Swift*, 198 B.R. 927, 931 (Bankr. W.D. Tex. 1996) (". . . a finding that a cause of action accrued *pre*-petition would conclusively establish that the cause *did* become estate property upon filing [of the petition] . . . .") (emphasis in original). And, the original Schedule B should have been amended after the filing of the State Court Action to reflect that the assets of the Chapter 11 estate included a pending lawsuit. These non-disclosures,

as a result, that (iv) [the Debtor] is, therefore, precluded from asserting the claims in the State Court Action." [Doc. No. 123].

The Debtor, the U.S. Trustee, and the largest unsecured creditor of the Debtor— Northwinds—oppose the reopening of the case.[3]   Among other arguments, they assert the following: (1) the Movants lack standing to prosecute the Motion to Reopen because they are not now, nor have they ever been, parties-in-interest in this bankruptcy case; and (2) even if the Movants have standing to request a reopening of the case, "cause" does not exist to reopen the case.  [Doc. No. 126].

For the reasons set forth below, the Court concludes that the Debtor's case should not be reopened.

### E. The Movants Lack Standing to Request a Reopening of the Bankruptcy Case Because They Are Not Parties-In-Interest

Bankruptcy Rule 5010 provides that "[a] case may be reopened on motion of the debtor or *other party in interest* pursuant to 350(b) of the Code."  Fed. R. Bankr. P. 5010 (emphasis added).  Thus, the pivotal question here is whether the Movants are "parties-in-interest" under Rule 5010. This Court concludes that they are not for two reasons.

1.  Reason #1: The case law addressing who has "party-in-interest" status for prosecuting a motion to reopen works against a holding that the Movants are parties-in-interest

Courts have generally held that the universe of individuals or entities who may request the reopening of a bankruptcy case is limited to a debtor, a creditor, or, in some cases, a trustee. *See, e.g., In re Alpex Computer Corp.*, 71 F.3d 353, 356 (10th Cir. 1995) ("[W]e find that

---

however, fall under the "no harm/no foul" rule because the original plan and the Amended Plan did disclose the claims, and the Amended Plan calls for the Debtor to liquidate these claims and pay creditors with the proceeds. Hence, this is not an instance where a debtor attempted to avoid disclosing a lawsuit in an effort to circumvent paying creditors and prosecute the suit for its own benefit.

[3] Although the U.S. Trustee did not file a written response opposing the Motion to Reopen, the U.S. Trustee appeared at the hearing and made arguments on the record that she opposed the Motion to Reopen.  [Hr'g held on Jan. 13, 2016, at 12:18:02−12:20:20 P.M.].

concept [i.e., the concept that "party in interest" includes all persons whose pecuniary interests are directly affected by the bankruptcy proceedings] implicitly confined to debtors, creditors, or trustees, each with a particular and direct stake in reopening cognizable under the Bankruptcy Code."); *In re Stanke*, 41 B.R. 379, 380 (Bankr. W.D. Mo. 1984) ("There is nothing in the comment to Rule 5010 to suggest that the drafters intended to limit the class by excluding the trustee.").

In the case at bar, the Movants do not fit within any of these three categories. It is self-evident that neither of the Movants is the debtor in this case. And, it is also clear that neither of the Movants has served as a trustee in this case; indeed, no trustee has ever been appointed. Finally, neither of the Movants has ever been a creditor in this case. [Finding of Fact No. 17]. The Debtor did not list them as creditors in its Schedules, and the Movants themselves never filed proofs of claim asserting that they held claims against the estate or the Debtor. [*See* Doc. No. 19- Schedule B]; [Finding of Fact No. 17]. Indeed, at the hearing on the Motion to Reopen, the Movants never argued that they were creditors in this case. Thus, based upon existing case law—which this Court finds persuasive—neither of the Movants is a "party-in-interest" under Rule 5010, and therefore neither of them may seek to reopen this case under § 350(b).

It is also noteworthy that several courts have issued opinions where a defendant in a state court lawsuit has opposed the motion of a debtor or a trustee to reopen the case so that they may amend the schedules to properly disclose a cause of action as an asset. These courts have held that the defendant was not a party-in-interest and therefore lacked standing to oppose the reopening of a bankruptcy case. *See, e.g.*, *In re Riazuddin*, 363 B.R. 177, 182−83 (B.A.P. 10th Cir. 2007) (state court defendant did not have standing to oppose the motion to reopen because its liability would be affected by the state suit but not by the bankruptcy); *In re Phillips*, 2012

14

WL 1232008, at *3 (Bankr. D.N.J. Apr. 12, 2012) (holding that the defendant in a state court action does not have standing to oppose the motion to reopen, and rejecting its assertion "that it is a potential creditor of the debtor's estate because it seeks to recover fees and costs from the debtor related to the state court action"); *In re Miller*, 347 B.R. 48, 52 (Bankr. S.D. Tex. 2006) ("Merck's only relationship to this case is that the Trustee asserts that Merck should pay money to the estate . . . [g]iving Merck a voice in whether the chapter 7 trustee can sue Merck is a very strange idea, a little like putting the fox in charge of the hen house . . . Merck is not a party in interest merely on showing that the Trustee will sue Merck."); *see also In re Sweeney*, 275 B.R. 730, 733 (Bankr. W.D. Pa. 2002) (holding that defendants do not have standing in bankruptcy court simply because they have standing in a state court action).

While the above courts have applied the "party-in-interest" standard in the context of standing related to *opposing* (versus *initiating*) the reopening of a bankruptcy case, this Court sees no reason why such analysis should not apply in the matter at bar—where the defendants (i.e., the Movants) are seeking to reopen the case. Indeed, if a defendant in a state court lawsuit lacks standing to oppose a motion to reopen a case, it surely lacks standing to initiate and prosecute a motion to reopen.

In sum, the Movants in the case at bar simply do not fall within the category of "party-in-interest" under Rule 5010. Rather, they are merely defendants in a separate state court lawsuit brought by the Debtor. [*See* Findings of Fact Nos. 6, 10 & 11]. Thus, the Movants here are just like the state court defendants in *Miller* and *Riazuddin*, where the courts held that they were not "parties-in-interest" who could oppose the reopening of a case. *See Miller*, 347 B.R. at 52 (stating that "Merck [i.e., the party opposing the motion to reopen] is not a [p]arty in [i]nterest in this [b]ankruptcy [c]ase and has no [s]tanding with [r]espect to [c]ase [a]dministration.");

*Riazuddin*, 363 B.R. 182–83 (state court defendant did not have standing to oppose the motion to reopen because its liability would be affected by the state suit, not by the bankruptcy). Whatever liability the Movants might have to the Debtor will be solely affected by the issuance of a final judgment in the State Court Action.

2. Reason #2: The Movants' argument that they are parties-in-interest because their pecuniary interests are at stake is off the mark

The Movants recognize that they do not fit within any of the three categories expressly referenced in the case law addressing who can be a "party-in-interest" under Rule 5010 for seeking to reopen a case under § 350(b). That is, the Movants know that neither of them are the debtor, the trustee, or a creditor in the case at bar. They argue, however, that they do not need to fit within any of these categories to be a "party-in-interest" with standing to prosecute the Motion to Reopen; they only need to have a pecuniary interest at risk; and the possibility of losing in the State Court Action and paying monetary damages fits this bill in their view.

The Movants are on firm ground with respect to arguing that there is authority for the proposition that one does not need to be a debtor, or a trustee, or a creditor to achieve the status of a "party-in-interest" in a Chapter 11 case. Specifically, § 1109(b) states that: "A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). This provision sets forth not only the three categories discussed in the case law concerning Rule 5010 (i.e., debtor, creditor, or trustee), but rather seven categories which confer "party-in-interest" status on an entity or individual. That is the good news for the Movants. The bad news is that the Movants do not fit within any of the other four categories: they do not comprise a creditors'

committee, or an equity security holders' committee, or an equity security holder of the Debtor, or an indenture trustee.

This does not end the inquiry, however. The universe of entities that can be a "party-in-interest" is not restricted solely to the seven enumerated entities set forth in § 1109. This is so because the first five words of § 1109(b) are "[a] party in interest, *including* [the seven enumerated categories] . . . ." (emphasis added). The word "including" is a term of art under the Bankruptcy Code. Section 102(3) states that "[i]n this title . . . 'includes' and 'including' are not limiting." Thus, the appropriate construction of § 1109(b) is that although there are seven enumerated categories for an entity to achieve "party-in-interest" status, even if an entity does not fall within one of these specific categories, the entity may still gain "party in interest" status by fitting into some undefined eighth category. Otherwise, § 102(3) has no meaning; and it is black letter law that Congress does not pass statutes that have no meaning. *See Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 216, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995) (interpretation that would leave a statute "utterly without effect" is "a result to be avoided if possible"); *see also* 2A Norman J. Singer, Statutes and Statutory Construction § 46:06 (6th ed. 2000) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error.") (footnotes omitted).

For those entities that do not fit within the seven enumerated categories of § 1109(b), but still want to gain "party-in-interest" status, they must look to case law. *In re A.P.I., Inc.*, 331 B.R. 828 (Bankr. D. Minn. 2005), is a case which aptly articulates the requirements which an entity must satisfy to achieve "party-in-interest" status:

> Over several decades of jurisprudence, the Supreme Court has formulated a two-component test to enable the federal courts to determine the

standing of complainants before them. Such parties must demonstrate both constitutional and prudential standing.

. . . To meet the requirement of constitutional standing, [a party] must show that it has suffered an 'injury in fact' that is: concrete and particularized and actual or imminent; fairly traceable to the challenged action of the [opposing party]; and likely to be redressed by a favorable decision. The party must have such a *personal stake* in the outcome of the controversy as to assure . . . concrete adverseness. The injury-in-fact must be palpable, though this requirement is not onerous. The injury need not be current; even a threatened injury will suffice.

Once a party has met these constitutional requirements, its standing may yet be challenged on three "prudential" grounds . . . A complainant's bid for standing may be defeated if: (a) it is asserting a third party's rights; (b) it alleges a generalized grievance rather than an injury particular to it; or (c) it asserts an injury outside the zone of interest the statute was designed to protect.

*Id.* at 857–58 (internal marks and citations omitted) (emphasis in original).

In the case at bar, the Movants have introduced no evidence at all to demonstrate constitutional standing. Based upon the record made at the hearing on the Motion to Reopen, the Movants failed to prove that they have already suffered, or will suffer, an injury that is concrete and particularized and actual or imminent. For example, the Movants would have needed to introduce testimony and/or exhibits that the Debtor had taken a judgment against them in the State Court Action, and that the Debtor was on the verge of executing on this judgment, thereby depriving the Movants of sufficient assets to run their respective businesses. Or, as another example, the Movants would have needed to introduce testimony and/or exhibits establishing that the Debtor, in the State Court Action, was about to obtain—or had just obtained—a prejudgment writ of attachment or garnishment that threatened to close down the respective businesses of the Movants. Without a showing of actual or imminent injury, the Movants cannot establish that they have constitutional standing, which in turn necessarily means that they cannot

achieve "party-in-interest" status under § 1109(b) for the purpose of filing and prosecuting the Motion to Reopen.

In sum, this Court concludes that the Movants are not parties-in-interest based upon: (1) the case law holding that "party-in-interest" status for a § 350(b) motion is only achieved if the movant is a debtor, a creditor, or a trustee; and (2) the failure of the Movants to prove that they have constitutional standing under § 1109(b).   The Movants therefore lack standing to file the Motion to Reopen, and it must therefore be dismissed.

**F. Even if the Movants Have Standing to Request the Reopening of This Case, the Motion to Reopen Should be Denied on the Merits.**

 1. <u>Review of the Meaning of the Phrase "for Other Cause" Under § 350</u>

Assuming that this Court is incorrect and that the Movants do, in fact, have standing to seek to reopen this case, the question then becomes: Should the case be reopened on the merits? The Debtor, Northwinds, and the U.S. Trustee argue that there is no basis under § 350 to reopen the case.  As already noted, § 350(b) states that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or *for other cause*."  11 U.S.C. § 350(b) (emphasis added).  And, as already noted, the Movants do not seek to reopen in order to "administer assets" or "to accord relief to the debtor," but only "for other cause."  It is the Movants' burden to establish such cause.  *In re The Brooklyn Hospital Center*, 513 B.R. 810, 818 (E.D.N.Y. 2014); *see In re Dudley*, 230 B.R. 96, 98 (Bankr. N.D. Tex. 1999); *In re Shen*, 7 B.R. 942 (S.D. Ca. 1980) (burden is on party seeking to reopen proceeding).

The term "for other cause" is a broad term that gives a bankruptcy court wide discretion to reopen a closed estate when cause for such reopening has been shown. *In re Case,* 937 F.2d 1014, 1018 (5th Cir. 1991).  As one bankruptcy court has stated: "The bankruptcy court should exercise its discretion, based upon the peculiar facts present and determine if cause exists and

how ultimately to dispose of the case." *In re Koch*, 229 B.R. 78, 88 (Bankr. E.D.N.Y. 1999); *In re Winebrenner*, 170 B.R. 878, 881 (Bankr. E.D. Va. 1994).

2.  Underline There are Several Factors That a Bankruptcy Court May Consider in Determining Whether "Other Cause" Exists under § 350(b) to Reopen a Case

In determining whether "cause" exists to reopen a case, numerous bankruptcy courts have considered several factors including, but not limited to: (1) whether it is clear at the outset that no relief would be forthcoming to the debtor (or the Movants in this case) by granting the motion to reopen; (2) the length of time that the case was closed; (3) whether a non-bankruptcy forum (e.g., state court) has jurisdiction to determine the issue which is the basis for reopening the case; (4) whether prior litigation in the bankruptcy court implicitly determined that a state court would be the appropriate forum; (5) whether any parties would suffer prejudice should the court grant or deny the motion to reopen; and (6) the extent of the benefit to the debtor by reopening. *In re Easley-Brooks*, 487 B.R. 400, 407 (Bankr. S.D.N.Y. 2013) (citing *In re Otto*, 311 B.R. 43, 47 (Bankr. E.D. Pa. 2004)); *see also In re Pennington-Thurman*, 499 B.R. 329, 331 (B.A.P. 8th Cir. 2013); *In re Crocker*, 362 B.R. 49, 53 (B.A.P. 1st Cir. 2007); *Matter of Denton*, Case No. 15-40452, 2015 WL 4498184, at *2 (Bankr. D. Ne. July 23, 2015).

While this Court is not limited to *only* the six factors set forth above and while the Fifth Circuit has not yet adopted such a multi-factor analysis, this Court, exercising its discretion, finds that a consideration of these factors is appropriate. *See Case*, 937 F.2d at 1018; *Koch*, 229 B.R. at 88. Based upon a consideration of these factors, and the totality of the circumstances presented in this matter, the Court concludes that the Debtor's case should not be reopened.

Underline Factor #1 - Whether it is clear at the outset that no relief would be forthcoming to the Movants by granting the motion to reopen: It makes sense to begin the analysis by focusing on whether it is clear at the outset that no relief would be forthcoming to the Movants if the Court

reopened this case.  If no relief would be granted, then there is no need for any further analysis, and the Motion to Reopen would merit denial.  *See, e.g.*, *In re Christensen*, 2015 WL 6125537, at *3 (Bankr. W.D.N.Y. 2015); *In re Pennington-Thurman*, 499 B.R. 329, 331–32 (B.A.P. 8th Cir. 2013).  Conversely, if relief would be granted—or might be granted—then the analysis of the other factors is appropriate; and after reviewing all of these factors and balancing the equities, the court, exercising its discretion, can either grant or deny the request to reopen.

In the case at bar, if the Court reopens this case, the Movants will file a motion requesting this Court to interpret the Amended Plan and Confirmation Order. Specifically, the Movants will request this Court to hold that the Amended Plan and Confirmation Order did not properly reserve the claims that the Debtor is now prosecuting against the Movants in the State Court Action, and that therefore the State Court Action must be dismissed. Accordingly, for purposes of assessing this first factor in the dispute at bar, the Court must analyze whether the Movants would definitely be denied this relief.

To determine whether the Court would deny this relief, it is necessary to focus on certain discrete issues. First, the Movants emphasize that the Amended Plan and Confirmation Order do not discuss the claims in the State Court Action or expressly reserve them for post-confirmation prosecution. The Movants then cite the Fifth Circuit's rulings in *United Operating* and *Texas Wyoming* to argue that the language in the Amended Plan and Confirmation Order simply does not meet the "specific and unequivocal" reservation required by these holdings.  *See United Operating*, 540 F.3d at 351; *Texas Wyoming*, 647 F.3d at 547.

There is no question that the Amended Plan and Confirmation Order do not expressly reserve the claims that the Debtor is presently prosecuting against the Movants in the State Court Action. [*See* Finding of Fact No. 9, referring to the State Court Action in the Amended Plan, but

21

not expressly reserving the claims in the State Court Action for post-confirmation prosecution]. Nor, for that matter, does the amended disclosure statement. [Doc. No. 91]. Hence, viewed in a vacuum, the Movants argument appears meritorious. After all, in *Texas Wyoming* and *United Operating*, the Fifth Circuit made it clear that generic language in a plan—such as stating that the debtor reserves "all and any claims"—is insufficient to actually reserve any claims. *United Operating*, 540 F.3d at 356 ("Neither the Plan's blanket reservation of 'any and all claims' arising under the Code, nor its specific reservation of other types of claims under various Code provisions are sufficient to preserve the common-law claims . . . ."); *Texas Wyoming*, 647 F.3d at 551. And, here, the Amended Plan and Confirmation Order use almost the exact same language (i.e., "any and all causes of action") that *United Operating* and *Texas Wyoming* held is not sufficiently "specific and unequivocal;" moreover, the Amended Plan and Confirmation Order do not even use the word "reserve." If these were the only facts, the Movants' argument would be compelling, and this Court could certainly not conclude at this point that it would definitely deny the underlying relief to be sought by the Movants.

But, as lawyer John Adams once said: "Facts are stubborn things . . . ." There is a material fact that undermines the Movants' position that the Debtor failed to reserve the claims under *United Operating* and *Texas Wyoming*. It is this: unlike the defendants in *United Operating* and *Texas Wyoming*, the Movants ***here have never been creditors in this bankruptcy***. [Finding of Fact No. 17]. Thus, even if the Amended Plan's language is insufficient to reserve the claims in the State Court Action, it is necessary to ask whether *United Operating* and *Texas Wyoming* even apply here. Stated differently, when the claims at issue are being prosecuted against defendants who were *never* creditors in this Chapter 11 case—and who therefore never

had standing to vote on the Amended Plan—did the Amended Plan even need to reserve these claims? Case law indicates that the answer is in the negative.

A case almost squarely on point is *In re Gulf States Long Term Acute Care of Covington, LLC*, 487 B.R. 713 (Bankr. E.D. La. 2013). There, the disbursing agent under a confirmed plan filed a motion seeking clarification as to whether the plan properly reserved claims that the agent wanted to bring against multiple defendants. *Id.* at 717. These defendants argued that the plan failed to reserve the claims with language required by *United Operating* and *Texas Wyoming*. *See id.* at 722–23. The bankruptcy court reviewed the facts of these two cases and noted that *United Operating* involved claims brought against a creditor and that *Texas Wyoming* concerned claims brought against shareholders of the debtor. *Id.* at 724. The bankruptcy court distinguished these facts from the facts in *Gulf States* by emphasizing that the defendants in *Gulf States* were **not** claimants in the Chapter 11 case—and that therefore the holdings in *United Operating* and *Texas Wyoming* were inapplicable. *Id.* at 725–26. The court persuasively described why:

> Any analysis regarding the sufficiency of a reservation of claims provision begins with an examination of the status of the party affected. If a debtor seeks to assert a claim against a creditor, the reservation is examined *vis-a-vis* the plan's treatment of the claim. The description of the reserved claim must be sufficiently clear so as to put the creditor on notice that its treatment under the plan might be affected by the pursuit of the reserved claim. A clear reservation of a cause of action provides the creditor with the information necessary to vote for or against the plan. *However, if the claim is against a nonvoting, nonclaimant, disclosure of the claim is not critical to the vote on confirmation because a third party noncreditor is not involved in the administration of the case.*
>
> *Because the reservation of a claim against a third party enures to the benefit of general creditors, the details of its nature are presumably less than critical to a decision to vote for or against a plan. Certainly the party against whom a claim is reserved cannot complain of a debtor's*

23

> *right to sue. Therefore at the outset, it is important to note that [the
> putative defendants] are not creditors of Debtor's estate.*

*Id.* at 723–24 (emphasis added).

The court in *Gulf States* then made a very perceptive observation about the putative defendants who were arguing that the claims the disbursing agent wanted to bring against them were not properly reserved in the confirmed plan: "This case involves non-creditor parties . . . [who] seek to gain an advantage by claiming ambiguity exists in the Plan's reservation of claims against them." *Id.* at 725. The court then very cogently articulated why the holdings of *United Operating* and *Texas Wyoming* apply only to creditors who are to be sued post-confirmation:

> [A] creditor in the bankruptcy is entitled to know about claims
> that will be [pursued] post-confirmation under the proposed plan, either
> because those claims might "enlarge the estate," or because the claims
> might be aimed at the creditor himself, Armed with this information, so
> the theory goes, the creditor can "adjust its vote accordingly."
>
> This rationale disappears entirely, however, when the defendant in a
> post-confirmation action is not a creditor. Specific or general, adequate
> or inadequate, notice to a non-creditor about claims reserved in a
> proposed plan serves no purpose because a non-creditor cannot vote on
> whether the plan should be confirmed.
>
> If non-creditor third parties were allowed to claim ambiguity, [the
> confirmed plan's disbursing agent] would have no right to pursue these
> causes of action, the assets would be lost, and distributions to creditors
> would be reduced.

*Id.* at 725–26 (internal citations omitted).

This Court finds the *Gulf States* rationale to be very persuasive, and adopts it in its entirety.[4]  Thus, if this Court did reopen this case, it would definitely deny the relief to be sought

---

[4] The Court notes that there is a Fifth Circuit opinion that affirms a ruling made in the *Gulf States* Chapter 11 case. The citation to this opinion is: *In re Gulf States Long Term Acute Care of Covington, L.L.C.*, 614 Fed.Appx. 714 (5th Cir. 2015). It is important to note, however, that the Fifth Circuit's ruling is **not** an affirmance of the specific ruling made by the bankruptcy court that the disbursing agent could prosecute post-confirmation claims against non-creditor defendants; that ruling was never appealed. Rather, the Fifth Circuit's ruling relates to another ruling by the bankruptcy court in the same case. Specifically, the bankruptcy court ruled that the disbursing agent could not prosecute post-confirmation claims against a certain individual and one entity who were separate and distinct from

thereafter by the Movants.  Stated differently, this Court would hold that: (1) the Amended Plan did not need to expressly reserve the claims now being prosecuted by the Debtor in the State Court Action because the Movants were not creditors entitled to vote for the Amended Plan; and (2) therefore, the Debtor could go forward with its prosecution of the State Court Action.  In sum, the Court finds that the first factor weighs against granting the Motion to Reopen.

Does this mean that the Court should not analyze the remaining five factors and simply deny the Motion to Reopen at this point?  Pursuant to *Christensen* and *Pennington-Thurman*, the answer is in the affirmative.  *Christensen*, 2015 WL 6125537 at *3; *Pennington-Thurman*, 499 B.R. at 331–32.  However, in his closing argument, counsel for the Movants seemed to argue that in assessing this first factor, the undersigned judge should focus on the fact that the Fifth Circuit itself has never opined on whether the "specific and unequivocal" rule is applicable to non-creditor defendants who are sued in a post-confirmation lawsuit; and that because it has not done so, the undersigned judge cannot now say that he would deny the underlying relief to be sought by the Movants if the case is reopened.  Stated differently, counsel for the Movants

---

the non-creditor defendants that the bankruptcy court ruled could be sued. Unhappy with the bankruptcy court's ruling, the disbursing agent appealed to the district court, which affirmed the bankruptcy court's ruling.  Unhappy with the district court's affirmance, the disbursing agent appealed to the Fifth Circuit, which affirmed the district court's ruling.

What is noteworthy is that when he was on appeal before the Fifth Circuit, the disbursing agent argued—for the first time—that he should be allowed to prosecute his claim against the two appellees because they were not creditors of the debtor, and therefore that the *United Operating* holding requiring a "specific and unequivocal" reservation of the claims was inapplicable. The Fifth Circuit set forth specifically the nub of the argument:

> [The disbursing agent] contends that, notwithstanding *United Operating*, a blanket reservation of 'any and all claims' is sufficient to retain a claim against a defendant if (1) the defendant is a non-creditor and (2) the reorganization plan clearly identifies how the proceeds of the claim will be distributed. [The disbursing agent] therefore asks us to announce an exception to *United Operating* that this Court has not previously recognized.

*Id.* at 718. Unfortunately for the disbursing agent, because he only raised this issue for the first time at the Fifth Circuit, the court refused to consider the argument: "We have no occasion to consider whether such an exception exists because [the disbursing agent] did not properly raise this argument in the proceedings below." *Id.* Thus, there is no Fifth Circuit precedent on point.  The bankruptcy court in *Gulf States*, however, has issued a very persuasive opinion in this Court's view that the holdings of *United Operating* and *Texas Wyoming* do not apply to non-creditor defendants, and this Court adopts this reasoning.

25

seemed to argue that because the Fifth Circuit itself has never opined on this particular issue, the first factor weighs in favor of reopening the case. This Court disagrees with counsel's interpretation of how to assess the first factor, but, out of an abundance of caution, and for purposes of completeness, this Court will proceed to analyze the remaining five factors. In so doing, the Court concludes that four of the five remaining factors weigh against reopening the case.

Factor #2 - The length of time that the case was closed: The longer a party waits to file a motion to reopen a closed bankruptcy case, the more compelling the reason to reopen must be. *Case,* 937 F.2d at 1018 (citing *Reid v. Richardson,* 304 F.2d 351, 355 (4th Cir. 1962)). The length of time between when the case was closed and the date the Movants filed the Motion to Reopen weighs in favor of the Movants. The time period from when the case was closed (August 26, 2015),[5] [Finding of Fact No. 21], to when the Motion to Reopen was filed (November 12, 2015), [Finding of Fact No. 22], is rather brief (i.e., approximately two and a half months). Indeed, at the hearing on the Motion to Reopen, counsel for the Debtor agreed that there "hasn't been a substantial amount of time in comparison to other motions to reopen." [Hr'g held on Jan. 13, 2016, at 11:59:30−11:59:47 A.M.]. As the time frame from when the case was closed to the date the Movants filed the Motion to Reopen is less than three months, this Court finds such delay, if any, is rather insignificant. *See In re Rodriguez,* 252 F.3d 435, at *3 (5th Cir. 2001) ("[W]hile timeliness of reopening is an equitable consideration which we take into account, only three months elapsed between closing and reopening. This short period of time is insufficient to call into question the bankruptcy court's finding of cause [to reopen the case].");  *In re Janssen,* 396 B.R. 624, 637 (Bankr. E.D. Pa. 2008) ("The case was closed for a relatively

---

[5] The Debtor references June 26, 2015 as the date the bankruptcy case was closed. [Doc. No. 126, p. 7 of 13]. However, upon a review of the docket, the Court entered an order closing the case on August 26, 2015. [Finding of Fact No. 21].

short period of time, seven (7) months."). Thus, the Court finds that this factor favors reopening the case.

Factor #3 - Whether a non-bankruptcy forum has jurisdiction to determine the issue which is the basis for reopening the case: There is no question that the state court in which the State Court Action is currently pending has the jurisdiction and the capability to determine the ultimate issue of whether the Debtor should be allowed to prosecute the State Court Action or whether it should be dismissed. *See In re Hepburn*, 27 B.R. 135, 136–37 (Bankr. E.D.N.Y. 1983) ("The Court agrees with the debtor that the proper forum at this point are the New York courts which are as able as this Court to apply the law of bankruptcy to the undisputed facts. Accordingly, the Court finds no good cause, as required by 11 U.S.C. § 350(b), to reopen this proceeding."); *In re Iannacone*, 21 B.R. 153, 155 (Bankr. D. Mass. 1982) (party's desire to litigate in bankruptcy court rather than state court is not cause to reopen); *see also Dunn v. Menassen*, 913 S.W.2d 621, 623–24 (Tex. App.—Corpus Christi, 1995) ("[W]e note that the mere pendency of a bankruptcy action does not automatically deprive a State court of all jurisdiction."). This factor therefore weighs against reopening the case.

Factor #4 - Whether prior litigation in the bankruptcy court implicitly determined that a state court would be the appropriate forum: The fourth factor weighs against the Motion to Reopen. This is so because the Amended Plan—which was approved through a litigation process called a confirmation hearing—contains no provision expressly retaining subject matter jurisdiction for this Court to adjudicate any post-confirmation disputes. While this Court acknowledges that a provision in a plan retaining jurisdiction for post-confirmation disputes does not—indeed, cannot—create jurisdiction, the presence of such a provision at least ensures that jurisdiction cannot be lacking based on an absence of a provision. *See In re Coho Energy, Inc.*,

309 B.R. 217, 219 n. 4 (Bankr. N.D. Tex. 2004) ("[A] plan which fails to retain subject matter jurisdiction may leave it lacking, but a plan cannot create jurisdiction where it does not otherwise exist."). Because the Amended Plan contains no provision for post-confirmation jurisdiction, the Amended Plan implicitly "determined that a state court would be the appropriate forum" to adjudicate any post-confirmation disputes. Indeed, this finding is particularly appropriate here because the Fifth Circuit has rejected an expansive view of post-confirmation jurisdiction in Chapter 11 cases. *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 391 (5th Cir. 2001) ("Because it comports more closely with the effect of a successful reorganization under the Bankruptcy Code than the expansive jurisdiction cases, we adopt this more exacting theory of post-confirmation bankruptcy jurisdiction."). For these reasons, the Court finds that this factor weighs against reopening the case.

Factor #5 - Whether any parties would suffer prejudice should the bankruptcy court grant or deny the motion to reopen: Courts have uniformly considered the prejudice, if any, to innocent creditors when determining whether to reopen a case. *See, e.g., Matter of Bianucci*, 4 F.3d 526, 527 (7th Cir. 1993); *In re James*, 487 B.R. 587, 594 (Bankr. N.D. Ga. 2013); *In re American Intern. Refinery*, 402 B.R. 728, 750 (Bankr. W.D. La 2008); *In re Paul*, 194 B.R. 381, 383 (Bankr. D.S.C. 1995). There is no question that Northwinds, the largest unsecured creditor of the Debtor, would be prejudiced by this Court's reopening of the case. This is so because Northwinds obtained a second lien on the Net Litigation Proceeds through good faith, arm's length negotiations prior to the Confirmation Hearing. [*See* Findings of Fact Nos. 8, 9, 15 & 16]. Indeed, Northwinds would not have voted in favor of the Amended Plan but for receiving this lien. [*See* Findings of Fact Nos. 8, 9, 15 & 16]. If this Court reopened the case in order to allow the Movants to argue that the Amended Plan did not properly reserve the State Court Action—

and that therefore the State Court Action should be dismissed—and if this Court accepted this position—then the very lien that Northwinds (and all other unsecured creditors in its class) legitimately bargained for prior to confirmation would be eviscerated. If this is not prejudice, then nothing is.

Further, reopening this case and allowing the Movants to thereafter file a motion requesting that this Court interpret the Amended Plan will necessarily force Northwinds to file a response opposing this motion. Northwinds would therefore be spending time and attorneys' fees litigating the ultimate issue of whether it will have a second lien on the Net Litigation Proceeds when it believed, in good faith, that the Amended Plan gave it a valid lien. Thus, even if Northwinds (along with the Debtor, who will also inevitably oppose the motion) prevails and convinces this Court not to grant the relief to be requested by the Movants, Northwinds would still have spent time and money protecting a lien that it believed, in good faith, was valid on the date that this Court confirmed the Amended Plan. These circumstances also constitute prejudice to Northwinds.

Northwinds is not the only party that may be prejudiced—the Debtor inevitably would be prejudiced if this Court grants the Motion to Reopen. The Debtor asserts that if the Court reopens the case, the Debtor would be prejudiced because substantial consummation of the Amended Plan has already occurred. [Hr'g held on Jan. 13, 2016, at 11:59:58 A.M.−12:00:15 P.M.]. Thus, the Debtor may not modify the Amended Plan. 11 U.S.C. § 1127(b) (". . . The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan *and before substantial consummation* of such plan . . . ."); *Matter of Manges*, 29 F.3d 1034, 1043 n. 13 (5th Cir. 1994) ("In light of the facts that the Plan has been substantially consummated . . . the requested modification is simply not possible."). This point is

important because if this Court accepted the Movants' argument that the Amended Plan did not properly reserve the State Court Action, the result would be that the State Court Action would be dismissed—thereby eviscerating the lien that the Amended Plan and Confirmation Order conveyed to Iberia Bank and the unsecured creditors (including Northwinds) on the Net Litigation Proceeds. Stated differently, the Amended Plan and Confirmation Order would be torpedoed because a key source of the Debtor's cash to pay its claims would be gone—possibly forcing a conversion to Chapter 7. Such a scenario would constitute prejudice to the Debtor—indeed, prejudice to all of its creditors as well.

The Debtor further argues that it would be prejudiced because if the case is reopened, it would be obligated to pay quarterly fees to the U.S. Trustee. [*See* Hr'g held on Jan. 13, 2016, at 12:01:42–12:01:50 P.M.]. [Doc. No. 126, p. 8 of 13]. This Court agrees with this point.

In sum, both the Debtor and its creditors would be prejudiced if the case was reopened. This fifth factor therefore weighs in favor of denying the Motion to Reopen.

Factor #6 - The extent of the benefit to the debtor by reopening: With respect to the sixth factor, this Court cannot conceive of any benefit the Debtor would receive if the case were to be reopened. To the contrary, the Debtor will not only be financially prejudiced by having to defend itself against the Movants but will be prevented from having any chance to fully perform under the terms of the confirmed, substantially consummated Amended Plan. If this Court reopened the case and thereafter held that the Amended Plan did not properly reserve the State Court Action, then a key source of payment under the Amended Plan would be eviscerated: there would be no chance of the Debtor ever recovering any proceeds from the State Court Action as contemplated by the Amended Plan. The Debtor would thereafter be unable to modify the Amended Plan in any way to ameliorate this problem because substantial consummation has

already occurred.  11 U.S.C. § 1127(b) (". . . The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan *and before substantial consummation* of such plan . . . .").  If these circumstances do not constitute harm, then nothing does.  Thus, this factor weighs against reopening this case.

In sum, five of the sixth factors weigh against, and one weighs in favor, of granting the Motion to Reopen.  Even if the Court places equal weight on each factor, this five-to-one ratio favors denial of the Motion to Reopen.  In fact, however, this Court gives greater weight to factor #5, particularly the prejudice that could befall the creditors if this Court reopens the case.  And, because this Court gives greater weight to this particular factor, the argument for denying the Motion to Reopening is all the more compelling.

Moreover, this Court has the discretion to review other factors in addition to the six factors already discussed above.  Exercising the broad discretion that it has in determining whether to reopen the case "for other cause," this Court chooses to focus on certain other circumstances as well.  *Case*, 937 F.2d at 1018 ("This discretion depends upon the circumstances of the individual case and accords with the equitable nature of all bankruptcy proceedings.").

First, the Movants initially received notice that the Debtor had filed a bankruptcy petition when the Movants were served with process in the State Court Action.  This service occurred in early May of 2015.  [Finding of Fact No. 11].  Paragraph 65 of the original petition expressly states that: "As a result of the crippling effect of ODIN's inability to access necessary working capital, on September 24, 2014, ODIN was forced to declare bankruptcy under Chapter 11." [Debtor's Ex. A, 14¶65].  Thus, by early May of 2015—i.e., several weeks *before* confirmation of the Amended Plan—the Movants knew of the bankruptcy, and they had the means to review the bankruptcy docket to determine what pleadings were being filed in this Chapter 11 case, [*see*

31

Findings of Fact Nos. 11 & 12]. Indeed, they could have used CM/ECF to review the original plan and the Amended Plan. [*See* Finding of Fact No. 12].

Had they chosen to do so, they would have seen that both the original plan and the Amended Plan proposed to convey a first lien to Iberia Bank on any Net Litigation Proceeds. While neither the original plan nor the Amended Plan proposed to convey a second lien to general unsecured creditors on the Net Litigation Proceeds—this provision was included in the Confirmation Order after negotiations took place between the Debtor and Northwinds—the proposed first lien to Iberia Bank was clearly disclosed. [Findings of Fact Nos. 7, 8, 15 &16]. And, the State Court Action itself was clearly disclosed in the original plan and the Amended Plan in the same paragraph setting forth that a first lien on the Net Litigation Proceeds would be conveyed to Iberia Bank upon confirmation of the plan. [Findings of Fact Nos. 7 & 9]. Hence, for the Movants to now come into this Court—after the Amended Plan has been confirmed and substantially consummated—complaining that the Amended Plan did not properly preserve the State Court Action has a very hollow ring to it; it is simply not a compelling argument. If the Movants had actually taken the time to check the activity in this bankruptcy on the docket sheet and reviewed the original plan and Amended Plan, they necessarily would have known that the Debtor, as an integral part of its reorganization, was definitely going to continue the State Court Action after confirmation of the Amended Plan. One does not propose to convey a lien on the net proceeds to be recovered from a lawsuit unless one actually intends to continue to prosecute the lawsuit. The Movants simply cannot complain that they are surprised by the post-confirmation prosecution of the State Court Action. As a matter of equity, these circumstances constitute yet another factor in favor of denying the Motion to Reopen.

There is more. Between the time that the Movants first learned of the bankruptcy (i.e., early May of 2015) and the date that they filed the Motion to Reopen (i.e., November 12, 2015), there was activity in the State Court Action.  For example, on May 21, 2015, the Movants filed a joint motion to transfer venue from Harris County to Galveston County. [Debtor's Ex. D].  On May 26, 2015, Marathon filed its original answer. [Debtor's Ex. E].  On June 1, 2015, Mainland filed its original answer. [Debtor's Ex. F].  On June 26, 2015, the Debtor filed a response to the joint motion to transfer venue. [Debtor's Ex. H].  And then, on July 20, 2015, Marathon filed its reply to the response.  [Debtor's Ex. I]. On the same day, Mainland filed its reply to the response. [Debtor's Ex. J].  Their filing of several pleadings in the State Court Action—which forced the Debtor to file responses—undermines the credibility of the Movants' position now that they just recently had an "ah-ha" moment that the Amended Plan did not properly reserve the claims that the Debtor is now prosecuting against them. These circumstances underscore that the filing of the Motion to Reopen is little more than an attempt to escape a state court lawsuit in which the Movants have become uncomfortable.

In sum, the Movants cannot say that they are surprised at the Debtor's post-confirmation prosecution of the State Court Action.   They have known all along that they have been defendants in this suit, and they knew this fact several weeks before the confirmation hearing on the Amended Plan.  Further, they have known—at least constructively—that the Debtor and its creditors have been—and still are—relying upon the Net Litigation Proceeds to help pay allowed claims under the Amended Plan.  These circumstances weigh against reopening this case.

Based upon all of the factors discussed above, the Movants have woefully failed to carry their burden in establishing that "other cause" exists under § 350(b) for this Court to reopen the Debtor's case.

## V. CONCLUSION

Boiled down to a nutshell, the Motion to Reopen is nothing more than a litigation tactic of the Movants to escape a legitimate lawsuit being prosecuted by a legitimately reorganized Debtor in order to pay allowed claims under a legitimately confirmed plan of reorganization. Rather than open the door to allow the Movants to obtain unwarranted relief in this case, the Court will slam the door shut so that the Movants and the Debtor can return to state court—where, it should be noted, the Movants will have ample opportunity to defend themselves and avoid paying a dime to the Debtor.

For all of the reasons set forth herein, the Court denies the Movants' request to reopen this bankruptcy case.

An order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

Signed on this 5th day of February, 2016.

Jeff Bohm
United States Bankruptcy Judge